# CASES

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1894.

## Karr v. The State.

### *Indictment for Murder.*

1. *Proof of handwriting; competency of witness.*—To prove handwriting, any person having a previous knowledge of the writing of the supposed writer may express an opinion, whether the writing in question was or was not written by such person; and on a criminal prosecution, a witness who had seen the defendant write two or three times, the last of which times was several years before the trial, and had noticed in his writing certain peculiarities, is competent to testify as to whether an anonymous letter, offered in evidence, was in defendant's handwriting or not.

2. *Admissibility of anonymous letter.*—On a trial under an indictment for murder, an anonymous letter threatening the life of deceased, which was found on him after the killing, and was shown to have been in his possession two or three weeks before that time, and was proved to be in the defendant's handwriting, is admissible in evidence to be considered by the jury in determining whether the killing of the deceased by the defendant was due to malice, even though such killing was shown to have been the result of a quarrel between the defendant and the deceased which occurred a few days before the homicide. (BRICKELL, C. J., dissenting.)

3. *Reasonable doubt; charge of court to the jury.*—In a criminal prosecution, a charge which instructs the jury that "the law does not require the defendant's guilt proved to a mathematical certainty," but that it does require it proved "to a moral certainty," to warrant a conviction; that it "is not necessary that you should be so convinced of his guilt by the evidence that there can be no possibility of his innocence, but it is necessary before you can convict the defendant that you should be so convinced of his guilt by the evidence that there can be no probability of his innocence, and no reasonable doubt of his guilt," and that "if there is probability of his

innocence it is just cause for reasonable doubt, and requires acquittal," is free from all objection.

4. *Argumentative charges.*—The giving of argumentative charges is not favored by this court; but if such charges assert correct legal propositions the trial court has discretion to give or refuse them, which discretion will not be reviewed on appeal.

5. *Self-defense; interference in behalf of father.*—The right of a son to defend his father is co-extensive with the right of the father to defend himself; and whatever the father may do in defending an assault actual or threatened, the son coming to his assistance may also rightfully do; but where on a trial for murder a charge requested by the defendant bases the right of the defendant, as a son, to defend his father to the extent of taking the life of his assailant, on the ground of his own freedom from fault in bringing on the difficulty, excluding all reference to freedom from fault on the part of the father in bringing on the difficulty, is rightfully refused.

6. *Homicide; formed design.*—A previously formed design on the part of the defendant to take the life of the deceased will not, by itself, preclude the right of self-defense; and on a trial under an indictment for murder a charge which instructs the jury that a "previously formed design on the defendant's part unlawfully to kill the deceased," if found to exist, will deny to the defendant the right to the plea of self-defense is erroneous, and should not be given.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

The appellant, William C. Karr, was indicted for the murder of one Jason Smith and was convicted of murder in the second degree, and sentenced to the penitentiary for twelve years.

Upon the trial of the case, as is shown by the bill of exceptions, the evidence for the State tended to show that at the time of the shooting, the defendant and his father, John Karr, were at the house of the defendant's father, sitting in the family room; that Jason Smith worked on the farm of defendant's father, and boarded and lodged at the house of his father, John Karr; that at noon, the defendant came to the yard of John Karr carrying in his hand a shot gun; that as he walked to the house, he was looking down upon the ground; that when he stepped upon the steps, the defendant and his father made a noise with their feet, causing him to look up, and as he did so they both fired upon him with double barrelled shot guns, both shots taking effect, and resulting in the almost immediate death of said Jason Smith.

The testimony for the defendant tended to show that

the deceased, on the day before the killing, said he was going to kill both the defendant and his father, and on that morning he said to the brother of the defendant that he expected to kill both the defendant and his father, John Karr; that when he stepped up on the steps of the house, wherein the defendant and his father were, the deceased looked up at them, caught the gun, which he was carrying in his right hand by his side, with his left hand, and thereupon the defendant and his father fired.

There was also evidence introduced on the part of the State showing that several weeks previous to the killing, the deceased and John Karr had quarrelled about the crop which was being raised by the deceased on the farm of John Karr, and that two days before the killing they had had another dispute and quarrel, which was renewed on the day before the killing. The State offered in evidence the following anonymous letter: "Jason Smith, you have been talking about sum wimmin scandlous in this settlement you said one hav told a God dam lie so you had better arraing yo business and get away soon. we want no such people as you in our settlement you may burn houses, but you must not talk about our wimmin as yo have. we will not stand it, so get of as soon as you can or we will come for you and let yo know who you are. we mean what we say. don't want to hurt yo, but we will if we have to go for yo. We have giv you far warning." The evidence for the State tended to show that deceased had this letter in his possession two or three weeks before he was killed, and at the time he was killed. The testimony of the witness Glidewell, tending to show that this anonymous letter was written by the defendant, is sufficiently shown in the opinion. The defendant objected to said letter being introduced in evidence, on the grounds, 1st, there was no sufficient predicate laid for its introduction; 2d, it was not shown that defendant had anything to do with it; 3d, it was hearsay, and 4th, it was illegal. The court overruled these objections, and the defendant duly excepted.

The court, in its oral charge, instructed the jury, among other things, as follows: "Unless you are satisfied from the evidence beyond all reasonable doubt of the defendant's guilt, you should not convict him. I do not mean that you must be satisfied beyond all possi-

[Karr v. The State.]

ble doubt; but beyond all reasonable doubt. The law does not require the defendant's guilt proved to a mathematical certainty, but the law does require his guilt proved to a moral certainty before he can be convicted. It is not necessary that you should be so convinced of his guilt by the evidence that there can be no possibility of his innocence, but it is necessary that before you can convict the defendant, you must be so convinced of his guilt by the evidence that there can be no probability of his innocence, and no reasonable doubt of his guilt. If there is probability of his innocence this is just ground for reasonable doubt and requires acquittal." The defendant duly excepted to this portion of the court's general charge. At the request of the State, through its solicitor, the court gave to the jury the following written charges: (1.) "The court charges the jury that a person charged with murder who seeks to justify himself on the ground of threats against his own life, is permitted to introduce evidence of such threats so made, but the same should not be regarded as affording a justification for the killing or offense unless it is shown that at the time of the killing the person killed by some act then done manifested an intention to execute the threats so made, or reasonably appeared to defendant to being so." (2.) "The court charges the jury that if the defendant relies on a justification of his acts partly by threats made against him by Jason Smith before the killing, then such threats will not, of themselves, be a justification of homicide, unless the jury further find from the evidence that the deceased at the time of the killing was manifesting an intention to carry such threats into execution by a positive act then done, or that from the acts of the deceased at the time of the killing, it would have appeared to a reasonable mind, under the circumstances, that deceased was attempting to execute the threats against defendant or his father." (3.) "If the evidence fails to show that at the time of the shooting Smith made any hostile demonstration toward William Karr or John Karr, then the jury can not consider any evidence of threats made by Smith against William Karr or John Karr on evidence of Smith's bad character." (4.) "The expressions used in charging the jury, that the jury must find the defendant not guilty unless the evidence should be

such as to exclude to a moral certainty every hypothesis but that of the guilt of the defendant as charged; and that the evidence for the State should be so convincing as to lead the minds of the jury to the conclusion that the accused can not be guiltless, are but strong expressions of that full measure of proof which the law exacts before it will sanction a conviction of crime, all of which only means that the jury must be convinced from the evidence, beyond a reasonable doubt, of the defendant's guilt." (5.) "Previously formed design on defendant's part unlawfully to kill Smith or any steps taken by defendant to bring on the difficulty, if found to exist, will deny to defendant the right to the plea of self defense." (6.) "The mere fact, if it is a fact, that Smith had forfeited his right to go to Karr's house, without Karr's consent would not, without more, give the defendant the right to kill Smith." (7.) "If defendant Karr had the previously formed design unlawfully to take Smith's life, and carried it into effect pursuant thereto, or if he was the aggressor, or brought on the difficulty, then Smith's character for violence, no matter how clearly proved, will avail him nothing." (8.) "The law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of repelling the presumption unless the evidence which proves the killing, shows also that it was done without malice." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (1.) "The court charges the jury that if they believe from the evidence that there existed in the mind of the defendant, at the time he fired the fatal shot, a reasonable apprehension of imminent danger to his life or limb, or that of his father, then the defendant could lawfully act upon appearances, and kill his or his father's assailant, if the defendant was without fault in bringing on the difficulty." (2.) "The court charges the jury that the law does not require one who is assailed in his own dwelling to retreat from it, but the law permits him, and says that it is his right, to stand his ground and kill his assailant, if it is necessary to do so to save his life or protect himself from great bodily harm, provided he is without fault in bringing on the difficulty. And in this case, the court further charges the jury, that if

.[Karr v. The State.]

they believe from the evidence that the defendant was in his father's room with his father, and that the deceased, at the time, approached the room with a gun in his hand, and that defendant then had a reasonable apprehension of grievious bodily harm to himself or his father at the hands of the deceased, then the defendant, or his father, are not called upon to retreat, but the defendant could stand his ground and use all reasonable means he reasonably believed were necessary to defend himself or his father." (3.) "The court charges the jury that if they believe from the evidence that the defendant was at his father's house and in his father's room, and that he reasonably believed that his father would be assailed in his house by the deceased, then the defendant had the right, under the law, to take such steps as he reasonably believed were necessary to defend himself or his father."

JOHN W. INZER, for appellant, cited 3 Brick. Dig., 219, § 577; *Roberts v. State*, 68 Ala. 156; Wharton's Crim. Evidence, § 69.

WILLIAM C. FITTS, Attorney-General, for the State.—1. There was no error in permitting the anonymous letter found on the person of the deceased to be read to the jury. Before this testimony was allowed to go to the jury the proper proof was made that the letter was in the handwriting of the defendant.—*Burke v. State*, 71 Ala. 377.

2. The charge of the court as to the quantity of evidence necessary to justify the jury in finding the defendant guilty stated the law with exactness and accuracy. *Williams v. State*, 98 Ala. 22; *Hodge v. State*, 97 Ala. 37; *Cohen v. State*, 50 Ala. 108; *Ray v. State*, 50 Ala. 104.

3. The first, second and third charges asked by the State were correct, and were properly given. It is the well settled rule that the evidence of threats is admissible; but this gives no right to anticipate the adversary, unless there is some evidence tending to show that at the time the homicide was committed the person killed was making some actual demonstration indicating a purpose to carry those threats into present execution.—Wharton on Criminal Evidence, §§ 84, 757; *Payne v. State*, 60 Ala. 80; *Holly v. State*, 55 Miss. 424; *Myers v. State*, 33

Texas 525; *State v. Alexander*, 66 Mo. 162; *Roberts v. State*, 68 Ala. 156.

BRICKELL, C. J.—1. When it becomes necessary to prove handwriting, any person having a previous knowledge of the writing of the supposed writer, may express an opinion that the writing in question was or was not written or signed by him. The frequency or infrequency of the opportunities of the witness to acquire knowledge rendering him capable of expressing an opinion, or the nearness or remoteness of such opportunities, in point of time to the time of his examination, are matters addressed to the credibility or weight, and not to the admissibility of the evidence, and are for the consideration of the jury. The testimony of the witness Glidewell shows that on two or three occasions, considerable lapse of time intervening, he had seen the defendant write the names of persons and places casually, and that there was in his handwriting a peculiarity attracting his attention, and the last of these occasions was several years before the trial. The testimony is not the highest and most satisfactory kind, but it was competent, and authorized the introduction of the writing in evidence, so far as its admissibility depended on proof of handwriting.—Lawson on Expert and Opinion Evidence, 280–86; 1 Green. Ev., § 577; *Hopper v. Ashley*, 15 Ala. 457.

2. It is a cardinal rule in the law of evidence, that facts and circumstances, which, if proved, are incapable of affording a just, reasonable inference or presumption in relation to a material fact involved in the issue on which the jury are to pass, are irrelevant and inadmissible. Testimony to be admissible must relate to and be connected with the transaction it is intended to elucidate, and the connection with it must not be remote, or a forced, strained, or mere conjectural conclusion. It must have a reasonable tendency to prove or disprove a material fact in issue. Of itself, it may not be full proof or disproof; it may be but a single fact or a collection of facts, or a single link in a chain of circumstances, or it may be merely corroborative. When it is without either of these properties; when it is of remote and collateral facts, from which no fair and reasonable inference can be drawn, it is inadmissible, since, as is said by Starkie,

[Karr v. The State.]

it is "at least useless, and may be mischievous, and may tend to distract the attention of the jury, and frequently to prejudice and mislead them."—*Governor v. Campbell*, 17 Ala. 566; *Seals v. Edmondson*, 71 Ala. 509; *State v. Wisdom*, 8 Port. 511.

In form, the writing is a letter without date or signature, addressed to the deceased. When it was written, or how or when it came to the knowledge or possession of the deceased, is not shown, further than as it may be matter of inference from the fact that after he was slain it was found in his possession, and had been for two or. three weeks previously. It manifests that because of imputed misconduct, the deceased had incurred the hostility and resentment of the author, warns him to leave the settlement, and threatens him with personal violence, if he does not heed the warning. It does not appear that, in consequence of its communication to the deceased, he was alarmed or excited, or induced to take any measures of defense or protection against the threats. It produced no change in the relations existing between the deceased and the defendant, or his father. Their relations were peaceful, until two or three days prior to the killing, when a quarrel originated between the deceased and the father of the defendant, touching their rights to a part of a crop produced by the labor of the deceased on the lands of the father; and it was not until after this quarrel that the deceased commenced carrying a gun, if previously he had one. If the letter was introduced as explanatory of the fact that the deceased was armed, carrying a gun at the time he was slain, it is obvious that there was no connection between the two facts; that the one was not the moving cause, or the inducement, or exerted any influence in inducing the other. To accept the letter as having a tendency to explain the fact that the deceased had and was carrying a gun when slain, would be an invitation to the jury, to indulge inferences which are not only far-fetched, but are absolutely inconsistent with the established facts, and all the reasonable inferences deducible from them. *Karr v. State*, 100 Ala. 4.

Malice is the essential constituent of murder; and the external circumstances most often relied upon as evidence of its existence, independent of such as may attend the killing, are unfriendly relations existing between the

slayer and the slain, former grudges or quarrels, ante-
cedent menaces, or concerted schemes to do the slain in-
jury. These circumstances are of peculiar value in iden-
tifying the wrongdoer, when that inquiry is involved;
and they are of peculiar value, when the wrongdoer is
known, so far as they tend to an elucidation of the act of
killing.  In the present case, the fact was undisputed
that the defendant and his father committed the homi-
cide with which they were charged; nor was it matter
of controversy that the killing was the termination of
the continuous difficulty, originating two or three days
previously between the deceased and the father of the
defendant.  The evidence not only tends to exclude, but
directly and positively excludes any other cause of quar-
rel; and excludes all just or reasonable presumption
that the slayer or the slain were moved or influenced be-
cause of any previous cause of quarrel, or pre-existing
hostility or resentment.  All that the letter imports is,
that at some time prior to the killing, the defendant had
hostile feelings toward the deceased, and the purpose,
deliberate it may have been, to do him great bodily
harm, and is evidence of pre-existing malice. The malice
it manifests is too far removed from the killing, not by
the mere lapse of time, but by the intervening events,
and more immediate causes to which the killing must be
attributed, or the force of the evidence disregarded to
authorize proof of it.  The continuance of malice is not
arbitrarily presumed; and it is never presumed where
there is evidence repelling it.  The circumstances at-
tending the homicide are often the better and stronger
evidence, repelling the presumption.—Whar. Homicide,
§ 441.  The law will not presume a killing to have been
perpetrated upon former grudges and threats, if there is
proof to the contrary; proof of a more immediate cause
upon which the killing should be predicated.—*Copeland
v. State,* 7 Humph. 479; *State v. Hill,* 4 Dev. & Batt.
491; *State v. Baker,* 1 Jones (Law) 267; 1 East Pleas
Crown, ch. 5, § 12.  There is no aspect of the case in
which the letter can be regarded as relevant, admissible
evidence; no fact involved in the main, principal inquiry
upon which the jury were to pass, it had any just, rea-
sonable tendency to elucidate.  The only purpose it was
capable of serving was to widen an inquiry into mere
collateral facts, or to lead the jury astray, directing their

[Karr v. The State.]

attention from the facts and circumstances attending the transaction, and which give to it, when ascertained, the true, real complexion it should bear. In this view, however, a majority of the court do not concur. They are of opinion, if the jury are satisfied the defendant was the author of the handwriting, that it has a tendency to show pre-existing hostility to the deceased, antecedent threats of personal violence, indicative of malice, and may be properly considered in determining whether the killing was upon malice or in self-defense.

3.   The instruction given by the court in its general charge, in respect to the degree or quantity of evidence necessary to justify the jury in pronouncing a verdict of guilty, is free from all just objection. It is expressed with care and precision, well calculated to impress the jury with a clear idea of all that the law intends by the requirement that the evidence should generate full belief of the guilt of the defendant to the exclusion of all reasonable doubt. The instruction on this subject given at the instance of the State, was useless, except as an argument; it did not explain or qualify the full and explicit instruction which had been given, and very properly could have been refused. It may well be doubted whether an argumentative instruction should ever be given; and in some jurisdictions the giving of them is reversible error. But in this court, while the practice of giving such instructions has not been favored, the rule has been declared, that if they assert correct legal propositions, the primary court has a discretion to give or refuse them, which will not be revised on error.

4.   It is doubtless true, that if a felonious attack be made on the dwelling house, or its inmates, or if it be threatened under such circumstances as create the reasonable belief that it is imminent, it may be resisted even to the taking of the life of the assailant. And it is also true, that the right of a son to defend his father is co-extensive with the right of the father to defend himself; and whatever the father may do rightfully in repelling an assault, actual or threatened, the son coming to his assistance may do rightfully. And it is equally true, that when one is assailed in his own dwelling, or place of business, there is no duty resting upon him to retreat, though retreat may be possible, from an assault he has not provoked. It is on these propositions, it was in-

tended to found the three instructions requested by the appellant which were refused by ,,the court. But it will be observed, that each of them predicates the right of the defendant to defend himself and to defend his father, on his own freedom from fault in bringing on the difficulty, excluding all reference to the freedom from fault of the father. As we have said, the right of the defendant to defend his father was coextensive with the right of the father to defend himself; he had not, as the father had not the right to take life to save the father from the consequences of an assault he knew the father had provoked.—*Whatley v. State*, 91 Ala. 108; *Gibson v. State, Ib.* 64. If these instructions had observed this principle, they should have been given.

5. The several instructions given at the instance of the State, have been examined, and we find reversible error in the fifth only. It is not true, that previously formed design on the part of the defendant to take the life of the deceased, as is asserted in one of the alternatives of the instruction, will of itself preclude the right of self-defense.—*Hornsby v. State*, 94 Ala. 55; *Domingus v. State, Ib.* 9. If there be evidence tending to show that prior to the killing, the defendant had the deliberate purpose, or the formed design, to take the life of the deceased, or to do him great bodily harm, and evidence tending to show that at the time of the killing he was rightfully defending himself, or his father, from a felonious assault made or threatened by the deceased, the true inquiry is, whether he availed himself of the circumstances as a pretext for carrying out the previous purpose or design. If that is not true, the existence of such purpose or design should not debar him from the right of defending himself or his father, to the extent the right would exist, if he had never entertained such purpose, or formed such design.—*DeArman v. State*, 71 Ala. 351.

For the errors pointed out, the judgment must be reversed and the cause remanded. The defendant will remain in custody until discharged by due course of law.

Reversed and remanded.