(115 So. 693)

### GIBBS v. STATE. (8 Div. 670.)

Court of Appeals of Alabama. March 6, 1928.

SAMFORD, J. The defendant killed Will Burrows in the morning of March 3, 1927, by shooting him with a gun. The tendencies of the evidence introduced by the state were to the conclusion that defendant was guilty of murder, and certainly, if believed beyond a reasonable doubt, was sufficient to sustain the verdict rendered. The tendencies of the evidence introduced by defendant were to the conclusion that the killing was done under a pending necessity to take life, and under circumstances that proved self-defense, or that it was done in the heat of passion engendered by abuse and an actual assault, and therefore the homicide could be no more than manslaughter in the first degree. The necessities of this decision do not require us to elaborate upon the testimony more than shall here follow. It was in evidence that the deceased when drinking was a man of bad character, and when in that condition was dangerous and bloodthirsty; that on the morning of the homicide deceased went to the boarding house of defendant's, kept by a Mrs. Roland; that defendant was in a room of the house by the fire; that the following then took place as related by the defendant:

"I heard Mrs. Roland speaking to some one, and heard Mr. Burrows say: 'If there is a man on this place send him out here. Is Alex Gibbs here, the G—— d—— son of a bitch. I want to

see him;' and he came right on into the room where I was sitting by the fire. He was drunk. I could smell whisky on him. He acted like a crazy man. He ran up and says, 'What have you got to do with it, you G—— d—— son of a bitch?' and cut my hat brim as I was sitting in a chair. The first time he cut at me was when he said, 'You G—— d—— son of a bitch, you take up for her and I will kill you.' He just grabbed me over there and tried to cut me, and said, 'this is old pop-eyed Will Burrows, G—— d—— you.' About that time I had my chair pushed back; I got up as fast as I could. He hit me with his fist a time or two and pushed me back against the mantel. About that time this boy Burnie came in and grabbed him by the arm. This is the overcoat I had it on. There is where he cut it. He just reached around and gave me a swipe. Here are two places (witness showing the cuts)."

Thereupon defendant introduced the hat and coat and also the overcoat and vest which defendant had on. Witness continued:

"He did not cut my skin or flesh. He knocked me against the mantel. Burnie is the boy who testified. He grabbed his daddy by the arm and began crying and begging him to go out. He looked like he was drunk. Burnie kept pulling at him. I hadn't a thing against him and hadn't said anything to him. I says to him, 'I'm your best friend'; and so he went on to the front door."

■ Besides the son of deceased who was present a part of the time, defendant was the only witness as to what took place in the room immediately preceding the killing. In arguing the case to the jury, defendant's counsel said: "Well, let's see what has happened now; Will Burrows is down there drunk again and raising a row." The solicitor moved to exclude from the jury said argument or statement of defendant's counsel because there was no evidence that there was a row and that Will Burrows was drunk and because illegal, irrelevant, and immaterial. The court sustained the motion, and defendant's counsel then and there in open court excepted.

■■ The statements of the facts and the exceptions is its own obvious answer. Section 6 of the Bill of Rights guarantees to every person in all criminal prosecutions the right to be heard by himself and counsel or either. This guaranty includes the right to argue to the jury the facts in the case from the standpoint of the defendant and to draw deductions therefrom pertinent to the issue then being tried. "It is the uniform course of judicial decision, that in criminal prosecutions, upon all matters or questions of fact triable by jury, the accused or his counsel must be heard; and that the court, whatever may be the opinion it entertains of the clearness, weight, or conclusiveness of the evidence, cannot deny or

withhold the right." The foregoing is an excerpt from the opinion of Brickell, C. J., in the case of Crawford v. State, 112 Ala. 1, 22, 21 So. 214, 220. Mr. Cooley in his work on Con. Limitations, 409, refers to this provision of the Constitution as a "high constitutional right." It is such, and must not be denied or abridged. Mitchell v. State, 114 Ala. 5. 22 So. 71; Lindsey v. State, 17 Ala. App. 670, 88 So. 189; Cross v. State, 68 Ala. 476. In Hobbs v. State, 74 Ala. 41, Stone, C. J., and in Mitchell v. State, supra, Brickell, C. J., issued timely warnings to trial courts not to exercise too severe censorship over the line of argument counsel may pursue in their presentations of the facts. To do so is treading on dangerous ground and appellate courts will closely scan such rulings, and, while counsel may sometimes abuse this right, it is safer for the court to err on the side of liberality than of restriction, though there be cases in which restriction will be upheld.

We have examined the entire record, and find no other error worthy of consideration, but the error pointed out denies the defendant a sacred constitutional right, and we cannot hold that it did not injuriously affect his case.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.