12 So.2d 758

## KABASE v. STATE.

### 6 Div. 991.

Court of Appeals of Alabama.

Feb. 16, 1943.

Rehearing Denied March 2, 1943.

Beddow, Ray & Jones, Roderick Beddow, and M. C. Zanaty, all of Birmingham, for appellant.

80

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

The conviction was for rape. The punishment was twenty years imprisonment in the penitentiary.

This is a companion case of Ellis v. State, Ala.Sup., 11 So.2d 861.[1] Ellis, at his trial, was convicted of the actual rape of the prosecutrix and received a punishment of twenty-five years imprisonment. It was not contended that this defendant, Kabase, harmed the young woman. The State urged his conviction upon the theory of a conspiracy existing between Ellis and this defendant, and that Kabase was an aider or abettor of Ellis in consummating the crime.

The law applicable to this phase of the case was finely exposited by our Presiding Judge in the recent case of Gandy v. State, 29 Ala.App. 485, 486, 198 So. 265, 266, where it was said: "The law as to this is, whether in fact the violence was done by one, or more than one; whether they [the defendant and his companions] went there with a common purpose to do violence, or to see it done, or to aid or encourage the doing of it, or to lend assistance should it become necessary * * *. So, if, being present with or without preconcert, they entered into a common illegal purpose, and one or more of them did the

deed of violence, and the others were present, aiding, abetting, encouraging, sanctioning, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary, and the jury, by the proper measure of proof, find either one of these categories to be true, then if the actor or actors be found guilty, the others are also guilty." Also see Ellis v. State, where this statement of the principle was fully quoted, with approval, by our Supreme Court.

It is cogently argued by his able counsel that the defendant was due a directed verdict because of the insufficiency of the evidence to establish any guilty connection of Kabase with said crime, but it is our conclusion, after a careful consideration of the entire evidence, that this contention is untenable.

In testing the propriety of the court's refusal to give for a party (the defendant here) the general affirmative charge, the entire evidence must be viewed in its most favorable aspect for the adverse party (the State here) against whom it has been requested. Alabama Power Co. v. Gladden, 29 Ala.App. 438, 197 So. 374; 2 Alabama Digest, Appeal & Error, ☞ 927(7).

It, of course, is well understood that such a charge is properly refused to the defendant in a criminal case if the evidence affords a substantial inference against him, Hargrove v. State, 147 Ala. 97, 41 So. 972, 119 Am.St.Rep. 60, 10 Ann. Cas. 1126; Wilson v. State, 30 Ala.App. 126, 3 So.2d 136, 140; Barefield v. State, 30 Ala.App. 243, 5 So.2d 113, certiorari denied 242 Ala. 131, 5 So.2d 115; 6 Alabama Digest, Criminal Law, ☞ 753(2); and this is true even though such evidence may be weak and inconclusive, Grimes v. State, 24 Ala.App. 378, 135 So. 652.

Likewise, a jury question is presented, and the affirmative charge properly denied, where conflicting inferences may reasonably be drawn from the evidence or where it contains conflicting tendencies. 18 Alabama Digest, Trial, ☞ 142, 143; Harden, Inc., v. Harden, 29 Ala.App. 411, 197 So. 94.

Strict and impartial study of the State's evidence reveals that the question of guilt was properly submitted to the jury for determination. There were some inferences reasonably arising from the proven facts and circumstances tending to support the State's contention.

Expressive of our conclusion on this issue is the observation in Howard v. State, 108 Ala. 571, 576, 577, 18 So. 813, 815: "It is enough to say there was not that want of criminating evidence,—such want of evidence of every fact material to a conviction,—as required that the court should withdraw it from the consideration of the jury. The facts and circumstances in evidence, if dissevered and disconnected, may be weak and inconclusive; but their probative force, when combined, as it was the province of the jury to combine them, under proper instructions from the court, may have satisfied them of the guilt of the defendant."

The affirmative charge for the defendant was correctly refused.

During the redirect examination of the prosecutrix, a pair of ladies' slippers—shoes (those of the alleged victim)—were produced by State's counsel, and defendant's attorney objected thereto, stating (among other things) as follows: "I want the record to show that * * * (state's counsel) asked if she wore those shoes out there, displaying a pair of women's shoes. * * * And we object to any showing or those shoes being brought in here and exhibited or displayed in the presence of the jury. They could be of no probative value, having nothing to do with the case either way, and they are not calculated or tend to prove or disprove anything in connection with the allegation of those things referred to in the indictment."

The court made no ruling as to this, but, after a colloquy between counsel and the explanatory argument of the deputy solicitor as to why the shoes were "material" (Record, p. 62), the said solicitor was then allowed to proceed, over due objection and exception of defendant, to exhibit the shoes to the jury, to question the prosecutrix elaborately regarding them, and to identify them as those worn by her on the night in question.

At each successive step in this interrogation, objections by the defendant were seasonably interposed thereto and exceptions duly reserved to the adverse rulings of the court.

It is strenuously argued that the foregoing interrogation and the production of the shoes as evidence, as above outlined, was

error. ' Counsel's brief asserts: "This honorable court will. note that these shoes were handled by the judge, the jury, and the solicitor, in the presence and hearing of the jury; they were not admissible under any phase of the testimony nor were they admissible as shedding any light on a disputed fact. The profert of the shoes was not calculated to prove or disprove anything."

▆▆ Of course, unless the shoes tended to shed some light upon the inquiry at issue, they were inadmissible. Husch v. State, 211 Ala. 274, 100 So. 321; Moore v. State, Ala.App., 9 So.2d 146; [1] Sikes v. State, 22 Ala.App. 33, 111 So. 760; Boyette v. State, 215 Ala. 472, 110 So. 812; Hyche v. State, 22 Ala.App. 176, 113 So. 644. It was not shown that the heels of the shoes were lost or kicked off in her alleged struggle with Ellis, nor, so far as appears from record, were the heels found at the scene, nor was it made to appear that the shoes were in any way otherwise damaged, and, under the rule of the foregoing cases, without some showing of relevancy, this evidence was improper. But we perceive a graver injury to the defendant than this.

The record discloses that, after the shoes had been duly identified by the prosecutrix and after they had been exhibited to the jury for their inspection, as above detailed, certain police officers (interested in the prosecution), before the conclusion of the trial, took the shoes away, so that they were not present and available during the argument of defendant's counsel to the jury.

This is the record, when discovery was made of the missing shoes:

"After the conclusion of the Solicitor's opening argument and after the argument of Mr. Zanaty, of counsel for the defendant, Roderick Beddow of counsel for the defendant, during his argument made the following statement and the following proceedings were had:

" 'Now, Gentlemen of the Jury, I want to discuss with you, the shoes which the young lady is alleged to have been wearing on the night that she is alleged to have been ravished by J. D. Ellis.'

"Counsel for the defendant, Mr. Beddow, turned away from the jury, walked to the table at which counsel had been sitting, looked among the exhibits, at the time making the following statement:

" 'I want those shoes, please.'

"Thereupon, the following transpired:

"Mr. Beddow: 'I want those shoes, please. I want to show that those shoes were made out of tissue paper, and I want to show them to the jury.' (Mr. Mack Johnson, bailiff, states that they weren't offered in evidence, and that the Homewood officers took them with them.)

"The Court: 'They were shown to the jury?'

"Mr. Beddow: 'Yes sir.'

"The Court: 'I will send out and get them.' "

Nevertheless, the court did not send for them and declined to have the shoes returned to the court room. On the contrary, he directed that the trial proceed forthwith without them, and concluded cursorily that they had not been "introduced" in evidence.

▆ But the shoes had been put in evidence in the case, and, as stated, State's counsel had already urged upon the court their materiality and, at one time during the discussion, had referred to them as "evidence" (Record, p. 61). They were, therefore, the proper subject of exhibition, inspection and comment by counsel in his argument to the jury and should have been at hand for such legitimate use at that time. It is conceivable (as was suggested in oral argument upon submission of this case) that, had the shoes been available at this juncture and the testimony of the prosecutrix upon the vital issue of non-consent been thereby impeached by calling the jury's attention to the fact that, though the heels were gone from them, the fragile shoes were not otherwise damaged (or, in fact, by making any other pertinent observation regarding them), the whole course of the trial might have been different, resulting differently.

▆▆ At least, this is the principle upon which a review of the matter is undertaken. The test is not was the defendant thereby injuriously prejudiced, but that he might have been. Roan v. State, 225 Ala. 428, 435, 143 So. 454. It must appear that the trial of the accused proceeded throughout without substantial prejudice. If there might have been such prejudice, then a new trial is due him. Williams v. State, 28 Ala.

App. 481, 189 So. 81; Robinson v. State, 29 Ala.App. 47, 191 So. 649. It is our view, therefore, that counsel for defendant rightfully insisted that the shoes be returned to the court room and made available for his argument to the jury, and that the court committed error, first, in declining this request and, second, in refusing to allow this evidence to be the subject of counsel's comment in such argument.

■ The action of the court, in ruling the shoes out of evidence and in refusing to have them returned to the court room, seems to have been based upon the belief that they did not become evidence in the case because the solicitor did not make the stereotyped remark, after exhibiting and identifying them, "I hereby offer the shoes in evidence." But this is an inept construction of what transpired and the constituents of presenting a fact before the triors thereof—the jury. The method of presenting such evidence (real evidence) in a trial is to properly identify it and exhibit it before or to the jury, as was done here. Then it becomes evidence.

■ "Demonstrative or real evidence, or evidence by inspection, is such evidence as is addressed directly to the senses of the court or jury without the intervention of the testimony of witnesses, as where various things are exhibited in open court." 32 C.J.S., Evidence, p. 454, § 601; Underhill's Criminal Evidence, 4th Ed., pp. 148, 168, Sections 115, 125; Chamberlayne Trial Evidence, Tompkins 2nd Ed., pp. 603, 613, Sections 632, 642; Wigmore on Evidence, Vol. 1, p. 222, Sec. 24, Vol. 2, p. 672, Sec. 1151; Wigmore's Code of Ev., p. 223, Rule 136; 20 Am.Jur., p. 600, Sec. 716; Jones Evidence, Vol. 3, p. 2518, Sec. 1376. The tenor of its proffer is immaterial. It becomes evidence—the fact it imports—when it is properly identified and exhibited before the jury in open court for their inspection. Of such import are the foregoing authorities.

Our courts have used similar expressions in describing the admission of this character of evidence. In Holley v. State, 75 Ala. 14, the vest of deceased, perforated by shot, was held to have been properly "produced and exhibited" to the jury; in Watkins v. State, 89 Ala. 82, 88, 8 So. 134, 136, the overcoat of deceased was said to have been "put in evidence"; in Mitchell v. State, 94 Ala. 68, 72, 10 So. 518, 520, it was held to be "not improper to permit this shovel to be produced and exhibited to the jury"; and in Adams v. State, 9 Ala. App. 89, 91, 64 So. 371, it was held "competent evidence" to "exhibit" a certain article to the jury; see also Peters v. State, 240 Ala. 531, 538, 200 So. 404, 410, where it was said "that there was no sound excuse for allowing the solicitor to exhibit the bloody paper in which the clothes were wrapped for safe-keeping."

Professor Wigmore uses the technical term, "autoptic proference" (supra, sec. 24)—i. e. "for the tribunal's self-inspection" (Wigmore, Sec. 1150, p. 671)—as designating the production of this character of proof, which now simply means the proffering or presenting in open court of such articles for observation or inspection.

There are cases from other jurisdictions analogously supportive. LaValley v. Ravenna, 78 Vt. 152, 62 A. 47, 2 L.R.A.,N.S., 97, 112 Am.St.Rep. 898, 6 Ann.Cas. 684; Richards v. United States, 8 Cir., 175 F. 911; State v. Pierce, 87 Vt. 144, 88 A. 740, 743; State v. Allen, 23 Idaho 772, 131 P. 1112, 1114; State v. O'Brien, 106 Vt. 97, 170 A. 98, 101; Davis v. Commonwealth, 271 Ky. 180, 111 S.W.2d 640, 642; Helton v. Commonwealth, 274 Ky. 697, 120 S.W.2d 245, 247.

■ The shoes of the prosecutrix, having been produced, identified and exhibited in open court to the jury for their observation and the witness interrogated about them, were in evidence in the case. That is, as Professor Wigmore puts it, they were "thus Evidence, in the sense that Evidence includes all modes, other than argument, by which a party may lay before the tribunal that which will produce persuasion. It is something more than and different from Testimonial or Circumstantial Evidence, and it is to be included among the kinds of Evidence in the broader sense of that term." Wigmore on Evidence, 2nd Ed., Vol. 2, Sec. 1150, pp. 671, 672.

■ It is our conclusion, therefore, that the learned trial judge overreached his discretion and erred to a reversal in not making available to defendant's counsel these articles when requested to do so, and when apparently they were of critical importance at this juncture in the proceeding.

■ Likewise, the shoes were the subject of legitimate argument by counsel (this whether construed as being in evi-

dence or not, after exhibition to the jury, People v. Burke, 18 Cal.App. 72, 122 P. 435, 449; State v. Blancett, 24 N.M. 433, 456, 174 P. 207; 23 C.J.S., Criminal Law, p. 543, § 1091), and the court should not have forbidden counsel the privilege of making such argument.

There are other matters which transpired during the arguments of respective counsel to the jury, the total of which, to our minds, clearly created such an atmosphere of prejudice against the defendant's case as to impel the setting aside of the verdict and the granting of a new trial.

The defendant had been disparagingly referred to as a "Dago" in certain of the testimony of the prosecutrix (when she was relating the conversation between Ellis and herself). Mr. Zanaty, of counsel for the defendant, in his argument to the jury sought to elicit in behalf of his client the principle of fair play invoked by the Golden Rule, and in the course of his peroration said: "Gentlemen of the jury, I have made reference to the Golden Rule and in conclusion I want to say to you again 'do unto others as you—'" Thereupon the court, ex moro motu, interrupted the argument, stating among other things: "I want to say to you that it is not the Golden Rule. This is a court of justice, and the question is whether, under the evidence and the law, as expounded to you by the Court, this defendant is or is not guilty in this case."

Then, when Mr. Beddow, associate counsel, in reserving exceptions to these remarks offered the explanation to the court that Mr. Zanaty was merely drawing a legitimate illustration and requesting fair play, the court reprimanded Mr. Beddow and finally stated to him: "I believe counsel is in contempt of court, and I could so hold him, but I won't do that; but I will ask you to please proceed with your argument."

■■■ Upon what basis the learned trial judge conceived the propriety of this uninvoked and gratuitous reprimand of accused's counsel is not clear. Surely to use as illustration and reference the sublime precepts of the Golden Rule was not improper. The Golden Rule and other inspired enunciations of the Master of Men are so interwoven with our concept of law and justice as almost to have become a part of its fabric, and it cannot be successfully gainsaid that pertinent reference thereto or legitimate illustrations therefrom

by counsel in argument to the jury are proper. Especially in this case (and each case rests upon its own peculiar facts and circumstances—Crawford v. State, infra, 112 Ala. at page 22, 21 So. 214; Bell v. State, 227 Ala. 254, 149 So. 687; Jackson v. State, 239 Ala. 38, 193 So. 417), where there was repeated reference in the State's evidence to the defendant as a "Dago", do we think that the argument had a proper place.

"Counsel should not be so restricted in argument as to prevent indulgence by way of illustration in historical facts and facts concerning public characters, and may allude to principles of divine law relating to transactions of men as may be appropriate to case." Pacific Mut. Life Ins. Co. v. Marks, 230 Ala. 417, 161 So. 543, Syl. 1.

■■■ It is also declared that counsel may properly make reference in argument to "established history and facts concerning public characters * * * and he may also allude to such principles of divine law relating to transactions of men as may be appropriate to the case" (64 C. J., p. 265, § 283); that "in criminal prosecutions, upon all matters or questions of fact triable by jury, the accused or his counsel must be heard; and that the court, whatever may be the opinion it entertains of the clearness, weight, or conclusiveness of the evidence, cannot deny or withhold the right" (Crawford v. State, 112 Ala. 1, 22, 21 So. 214, 220); while a regulatory discretion in such matter is vested in the court, that discretion is not irrevisable; "the discretion is not mere power to be exercised because it exists; nor is it to be exercised capriciously or arbitrarily, and, in its exercise, it should always be borne in mind, that it is a high constitutional right of the accused it is proposed to regulate" (idem); and "trial courts would be treading on dangerous ground, were they to exercise a severe censorship over the line of argument counsel may pursue. They [trial courts] must not allow them [counsel] to constitute themselves unsworn witnesses, and to state, as facts, matters of which there is no testimony. But we [the appellate courts] have gone no further" (Hobbs v. State, 74 Ala. 39, 41). Also Mitchell v. State, 114 Ala. 1, 5, 22 So. 71; Gibbs v. State, 22 Ala.App. 345, 115 So. 693.

To reprimand Mr. Zanaty as above and to deprive the defendant of the privilege of this character of argument, we think, and hold, was prejudicial error.

Logically following, then, is the next conclusion that the deprecation of Mr. Beddow for his recitation and reservation of exceptions to this stated action of the court regarding Mr. Zanaty's argument was likewise calculated to result in prejudice to the defendant.

"That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he * * * uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause." Dennison v. State, 17 Ala.App. 674, 676, 88 So. 211, 213.

Another instance of probable prejudice to the defendant was the unfavorable reference by State's counsel in his argument to the jury of the failure of the defendant to offer as a witness in his behalf, his co-defendant (not on trial), J. D. Ellis. The result of the holding in the case of Brock v. State, 123 Ala. 24, 26 So. 329, is that it is not permissible for the prosecuting attorney in his argument to the jury to indulge in adverse comment upon the failure of the defendant on trial to call a co-defendant as a witness. The above ruling seems to be without the influence of the recent case of Waller v. State, 242 Ala. 1, 4 So.2d 911, dealing with the availability of a witness, but is premised upon the principle that should the co-defendant, not on trial, decline on the ground of self-incrimination (and here Ellis could have so declined, his case not having been finally concluded) to testify, if called to do so by the accused on trial, this very refusal might be construed by the jury to the defendant's disadvantage. Hence the denunciation of such adverse comments.

We do not think the perfunctory sustaining of defendant's objection, without more, was sufficient to eradicate the injurious effects of this argument, nor that the argument could be justified as invited or retaliatory to what was argued by defense attorneys.

The oral charge of the court was lucid and able. There were, however, several refused charges, requested by the defendant, stating correct principles of the applicable law, which, to our minds, were not fairly and substantially covered elsewhere in the court's instructions and which should have been given. Our view that a reversal must be entered, anyway, obviates the necessity of specific treatment of these several charges.

Charge E–3, urged as incorrectly refused on authority of Burton v. State, 107 Ala. 108, 18 So. 284, has been subsequently and repeatedly condemned as argumentative. Amos v. State, 123 Ala. 50, 26 So. 524; Montgomery v. State, 169 Ala. 12, 53 So. 991; McCarty v. State, 22 Ala.App. 62, 112 So. 184; Millhouse v. State, 235 Ala. 85, 89, 177 So. 556. Its refusal was proper.

Some written charges given at the request of the State should have been refused as argumentative and confusing. Notable are Charge 9, which was elliptical, and Charge 10, which was clearly involved and argumentative. We base our reversal elsewhere, however, in view of the holding regarding such charges in Karr v. State, 106 Ala. 1, 17 So. 328.

Discussion of the other matters pressed upon us for revision is unnecessary, since the alleged errors complained of will probably not occur again.

We have given this case most careful study and consideration, meanwhile mindful of the favorable presumption due the rulings of the trial court. But there is another duty. The unfortunate one—whether guilty or innocent—who stands before the bar of justice, must have a fair trial, free of improper prejudice.

"The guilty, as well as the innocent, have a right to be tried in accordance with the law of the land. The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and as to the guilty, the law provides that such shall not be punished except in the mode and manner provided by the law." Patterson v. State, 202 Ala. 65, 68, 79 So. 459, 462.

In this case we are convinced that the errors which intervened during the trial, dealt with hereinabove, resulted in such substantial prejudice to the defendant that the judgment below should be reversed and a new trial granted. It is so ordered.

Reversed and remanded.