The appellant was indicted and convicted for rape in Mobile County, Alabama. In accordance with the verdict and punishment fixed by the jury, the trial court entered judgment and sentenced the appellant to ten years in the penitentiary.
We should, perhaps, begin the recitation of the facts with the phrase "once upon a time" so bizarre and unique is the testimony in this case. According to the testimony presented by the State, Clarissa Roberts, the prosecutrix, and her two sisters, Gloria Ann and Bonnie Jean, along with two male companions, were in the Club Debonaire in Mobile County on the night and early morning hours of March 29-30, 1976.
The appellant and Gloria Ann had been going together but had broken up about two weeks prior to this incident. While the three sisters were in the club, the appellant came in and argued with Gloria Ann. Following this confrontation, everyone left.
Clarissa and her two sisters were waiting outside the club for their dates to bring the car. The appellant approached them and placed a gun against the head of Gloria Ann. Immediately, Clarissa and Bonnie Jean attacked the appellant. Gloria Ann managed to escape the appellant's grasp and ran. As she escaped, the appellant shot her in the shoulder. During this struggle, Bonnie Jean was shot through the nose with the appellant's pistol.
After knocking Clarissa to the ground, the appellant ran toward the club. Two shots were fired from the front porch of a house next door to the club by an unnamed assailant. One of these shots pierced the right buttock of the appellant. The appellant then ran into either the hallway or vestibule in front of the bathrooms, the women's bathroom, or the men's bathroom in the rear of the club depending upon which witness is testifying and what part of their testimony is being considered.
Clarissa followed the appellant. When she tried to enter the bathroom (or the hallway in front of the bathrooms) she was struck in the head by the appellant with his pistol. A struggle for the pistol ensued. Overcome, Clarissa fell to the floor in the hallway by the ladies' bathroom. The appellant placed his pistol to her head and ordered her to perform fellatio on him. When she refused, he knocked her unconscious. When Clarissa awoke, the appellant was on top of her, having sexual intercourse with her, after having removed her shoes, panty hose, panties and panty girdle.
Clarissa began struggling again only to be hit once more by the appellant who then ordered her to dress. The appellant told her he would kill her if she said anything about this incident.
While the appellant and Clarissa were still in the hallway or a bathroom, the police arrived. Officer Willie Allen of the Mobile Police Department testified that he saw the appellant and Clarissa sitting on the floor facing each other in the hallway or vestibule in front of the bathrooms. Officer Allen talked the appellant into surrendering after twenty-five or thirty minutes. The officer testified that the appellant "made *Page 475 
this old TV remark that he was going to kill himself and shoot us and shoot because he had a couple of bullets left".
After surrendering, the appellant did not appear inebriated to Officer Allen. Although his rear was covered with blood, as if he had been sitting in it, the appellant did not appear to be in great pain and only complained of "something stinging in his buttocks".
When Clarissa was placed in the police car she was upset and hollering. She complained of having been raped. Both she and the appellant were taken to the hospital for treatment.
At the hospital, Dr. Walter L. Hogan examined Clarissa. He found "hemorrhage (similar to bruises), scratches about the left side of her face, by her head and upper neck". Seminal fluid was found inside the vault of the vagina. Clarissa was "emotionally distraught" and "upset generally". Dr. Hogan's clinical impression was that "traumatic sexual penetration had occurred". Dr. Hogan defined "traumatic" as associated with other evidence of physical violence. Clarissa told him that she was forced into a washroom and raped under threat of death.
In her testimony, Clarissa stated that she did not complain of having been raped to any policeman and denied making any statement of complaint to Dr. Hogan.
The appellant's version of the events of that fateful night is somewhat different. Testifying in his own behalf, the appellant stated that he had talked with his former girlfriend, Gloria Ann, at the club on the night in question. After leaving the club, he sat on an automobile with a friend and talked. When the appellant headed for his car to leave he passed Gloria Ann who, along with her two sisters, was standing in front of the club. Gloria Ann called the appellant an "M.F." and the appellant heard a shot. He turned and Clarissa and Bonnie Jean were upon him, Bonnie choking him and Clarissa grabbing his arm. The appellant, despite such obvious obstacles, saw Gloria Ann running down the street putting a gun back into her purse. He then pulled his own gun, fired and saw her go down. When the appellant tried to break away from Clarissa and Bonnie, his gun accidentally went off hitting Bonnie Jean in the nose.
The appellant ran back into the club and into the men's bathroom. Upon entering the bathroom, he turned and saw that Clarissa had followed him so he hit her with his pistol. A struggle ensued. The fight came to a standstill. The appellant was sitting on the floor, "bleeding all over the place" and Clarissa was sitting on the toilet. The appellant checked his body to see where he had been shot. He unzipped his pants and looked behind him and saw the blood. By this time, the whole floor of the men's room was covered with blood. The remainder of this tale is best related in the appellant's own words:
 "Well, Rita (Clarissa) started saying, you know, don't get — when I saw the blood, I started panicking again, I started getting where I thought I was bleeding to death, you know, and she picked up some tissue, you know, and wiped it off and she said, `Hey, you are going to be all right, don't, you know, don't get excited, don't do nothing else'. That is about the time I started — I said, `I will just go on and kill myself because I hurt, you know, these two people, you know, and she just kept on telling me, `Be calm, be calm'.
* * * * * *
 "Well, I was sitting on the floor and I started wiping this blood up and by this time I am half out. Rita was sitting up on the toilet and she started talking and she said, `Hey, you know, you didn't hurt my sister and them and you be calm'. She said, `I want to do something to calm you down', and by this time she sat up there, she took off her clothes and put them on the top of the toilet and sat on top of me."
Sitting on the bathroom floor the appellant engaged in sexual intercourse with Clarissa.
 I
Prior to trial, the appellant filed a motion to produce seeking an order from the trial *Page 476 
court directing the Mobile Police Department or the Office of the District Attorney to produce the trousers worn by the appellant at the time of his arrest. The trial court issued the order and directed the state to produce the trousers or "to show cause why not on trial date". The asserted significance of the trousers is that if the testimony of the prosecutrix is true and the appellant raped her while she was lying on the bathroom floor, the knees of the trousers should have been covered with blood. The appellant contends that the fact that the front of the trousers was not bloody would tend to support his version that the prosecutrix willingly had intercourse with him while sitting in his lap.
At trial, the trousers were not produced nor did the state produce any explanation as to their location or the reason for their failure to produce them.
During the course of the trial, the state's witness, Willie Allen, a police officer for the city of Mobile, testified that there was blood on the right rear pocket area of the appellant's trousers and "partially over the rest of his back side"; "It appeared to me like someone was sitting in blood". Officer Allen further testified that he took the appellant to the Docket Room and did not know what happened to the trousers.
The appellant testified that while he was confined in the Mobile city jail, he changed his clothes in the Docket Room. His trousers, along with his other clothes, were placed in a brown paper grocery bag which was tied with a white string and a name tag bearing his name. The appellant testified, in effect, that that was the last time he saw his trousers. The trial court sustained the state's objection and would not allow defense counsel to inquire further as to the whereabouts of the trousers or if the appellant had made any attempt to locate them.
The appellant further testified that the bathroom floor was covered with blood and that the back of his trousers were bloody.
"Q. Was there any blood on the front of your pants?
 "A. The right leg where I got shot at, it was soaked with blood too, at the back of them.
"Q. All right. How about the left leg?
 "A. It didn't have any blood on it, you know, just a little, splotched on it or something."
In closing argument, defense counsel addressed the jury as follows:
 "Where are the pants? I will submit to you that we don't have them. I will submit to you that if we had them here, the knees would be clean, and I would submit to you that the only way those knees could be clean . . ."
At that point objection by the state was sustained.
At the outset it is important to note that every party has the right to be heard in person or by counsel. Alabama Constitution 1901, § 6; Gibbs v. State, 22 Ala. App. 345,115 So. 693; Jackson v. State, 239 Ala. 38, 193 So. 417. All evidence admitted is subject to comment by counsel. B.R. . E.Co. v. Wildman, 119 Ala. 547, 24 So. 548.
In Alabama, liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury.Mitchell v. State, 57 Ala. App. 601, 329 So.2d 658, cert. denied, Ala., 329 So.2d 663 (1976); Binion v. State,57 Ala. App. 234, 327 So.2d 729, cert. denied, 295 Ala. 391,327 So.2d 732 (1976). Counsel has a right to argue any reasonable inference from the evidence or lack of evidence. Davis v.State, 49 Ala. App. 587, 274 So.2d 360, cert. denied, 290 Ala. 364, 274 So.2d 363 (1972) and to draw conclusions from the evidence based on their own reasoning. Carter v. State,56 Ala. App. 450, 322 So.2d 741 (1975); Cazalas v. State,43 Ala. App. 6, 78 So.2d 562, cert. denied, 278 Ala. 708,178 So.2d 565 (1964).
An inference is merely a deduction from proven facts. It is a permissible deduction from the evidence which the jury may accept or reject or give such probative value as it wishes.Williams Alabama Evidence, § 35, p. 72. *Page 477 
Trial judges ordinarily are loath to limit inferential argument which has any connection with the evidence even though far-fetched. Hobbs v. State, 74 Ala. 39 (1883); BirminghamElectric Co. v. Cleveland, 216 Ala. 455, 113 So. 403 (1927).
 "The presiding judge, as a rule, will best determine when discussion is legitimate, and when it degenerates into abuse and undue license. While he should not permit wanton abuse of adversary or witness, he would occupy questionable ground if he arrested counsel in his attempt to educe inferential facts or intents from testimony in proof. Argument is but an aid to the jury, to enable that body to arrive at correct conclusions; and it would be dangerous to accord to the presiding judge the right and power to intervene, and declare authoritatively when an inference of counsel is or is not legitimately drawn. This is for the jury to determine, if there is any testimony on which to base it." Cross v. State, 68 Ala. 476 (1881).
So long as counsel does not travel out of his case and confines statements to reasonable inferences deducible from the evidence, he should not be controlled. Edwards v. State,56 Ala. App. 405, 321 So.2d 744 (1975); Bullard v. State,40 Ala. App. 641, 120 So.2d 580 (1960); Lindsey v. State,17 Ala. App. 670, 88 So. 189 (1921).
Here the appellant was entitled to have his trousers admitted into evidence had they been available. Huggins v. State,271 Ala. 428, 123 So.2d 911 (1960); Smith v. State, 41 Ala. App. 528, 138 So.2d 474 (1962); Gould v. State, Ala. App.,332 So.2d 402 (1976). The trousers tended to either disprove or corroborate and certainly would illustrate or elucidate the manner in which the sexual intercourse or rape occurred. As such, they were relevant. Gaskin v. State, 53 Ala. App. 64,297 So.2d 388, cert. denied, 292 Ala. 721, 297 So.2d 391 (1974);Hunter v. State, 38 Ala. App. 351, 83 So.2d 737 (1956). Additionally they were material to a fact in issue (consent and credibility). Therefore, the trousers, if available, could have been properly admitted into evidence. Barbour v. State,262 Ala. 297, 78 So.2d 328 (1954); Hubbard v. State, 283 Ala. 183,215 So.2d 261 (1968).
Testimony describing the condition and appearance of the trousers was properly before the jury. As stated above, it is within the range of legitimate argument for counsel to discuss inferences that may be drawn from the evidence, and to state such inferences. Here, the action of the trial judge precluded defense counsel from arguing reasonable inferences to be drawn from physical evidence which had been described to the jury but was not available for inspection. This was in direct contravention of the rules set forth above and constitutes error prejudicial to the appellant. Willingham v. State,27 Ala. App. 363, 172 So. 471 (1937); Kabase v. State, 31 Ala. App. 77, 12 So.2d 758 (1943).
 II
During the trial, three of the state's witnesses were shown to have given prior inconsistent statements at a preliminary hearing. The trial court refused the following requested charge:
 "Members of the jury I charge you that you may consider the contradictory statements made at preliminary hearing by the witnesses Gloria Ann Roberts, Bonnie Roberts, and Clarissa Roberts, in determining the weight to be given by you to the testimony of such witnesses."
This was prejudicial error. Bennett v. State, 160 Ala. 25,49 So. 296 (1909); Burton v. State, 115 Ala. 1, 22 So. 585 (1896);Local 204 of Textile Workers Union of America, et al. v.Richardson, 245 Ala. 37, 15 So.2d 578 (1943); BirminghamRailway Light and Power Company v. Glenn, 179 Ala. 263,60 So. 111 (1912); Reynolds v. State, 196 Ala. 586, 72 So. 20 (1916).
The oral charge of the trial court on the credibility of witnesses covered the following principles: that all witnesses are presumed to have spoken the truth; that the testimony of each witness must be reconciled and in doing so the jury may consider the relationship, demeanor, bias and prejudice of the witness; that a witness's testimony *Page 478 
may be disregarded if found to be falsely given in an effort to wilfully deceive the jury. Thus the particular charge requested, being a distinct principle of law, was not covered in the court's oral charge.
In view of the above findings of error, this court finds it unnecessary to discuss the additional issues raised by counsel for the appellant.
REVERSED AND REMANDED.
All Judges concur.