LEIGH M. CLARK, Retired Circuit Judge.
Appellant was convicted of an assault with a deadly instrument upon a law enforcement officer while engaged in the active discharge of his lawful duty or duties, in violation of Code of Alabama 1975, § 13-1-42, and was sentenced to imprisonment for five years.
Evidence for the State, consisting chiefly of the testimony of Chief Deputy Sheriff Hoyt Bassell (the alleged victim), Deputy Buddy Payne and Mr. Jack McGhee (the jailer of the Tallapoosa County Jail), was to the effect that late in the afternoon of August 28, 1979, the jailer called Deputy Bassell to aid the jailer in regard to a disturbance in a cell of the jail. The three went to the cell and found it in great disarray, that the defendant, Robert Farrell, Tim Easterwood and Anthony Gray were in the cell in a state of intoxication from some wine that they had made from potato peelings. The named prisoners were told that *1121 they would have to be moved to another cell until they sobered up. The cell door was not unlocked immediately, but soon thereafter, after one or more of the officers had left and returned, the jailer unlocked the cell door and one of the officers told the prisoners to file out of the cell one at a time. Anthony Gray replied, “We are not going to come out fat boy you are going to have to come in and get us.” A fight ensued between the prisoners and the officers. The defendant was swinging a screwdriver at Deputy Bassell and at Deputy Payne. Neither was struck with the screwdriver. The disturbance was eventually quelled and the prisoners secured.
Evidence for the defendant, consisting chiefly of the testimony of the defendant and Tim Easterwood, was to the effect that they and Robert Farrell and Anthony Gray were drinking some homemade wine in the cell when Officer Bassell and Officer Payne came to the cell door, opened it and told them to come out. According to their testimony, the officers entered the cell, struck the two men a large number of blows with their fists and with clubs or night sticks. They said that defendant did not have or use a screwdriver.
The foregoing brief summary should be sufficient to show that, notwithstanding the sharp conflict in the evidence, an issue of fact was presented as to whether defendant had committed an assault upon Chief Deputy Bassell. There is no contention to the contrary, except in two particulars that we will now consider.
In one particular appellant says that the drunkenness of defendant made it impossible for him to have committed the felonious assault charged. He argues “that by the State’s own evidence it would have been impossible for the defendant to have performed a felonious intent as he was in a wild state of drunkenness according to Hoyt Bassell’s testimony.” There is no basis for a contention that the offense charged in the indictment requires a different or distinct kind of intent from that required for the commission of an assault in general. The word “intent” is not found in the indictment or in the statute upon which the indictment is based. As to the requirement of an intent, the offense is not to be likened unto offenses of which a specific intent is an element. It is not to be likened to assaults that require kinds of a specific intent such as an assault with intent to murder, maim, rob, ravish or commit the crime against nature in Code of Alabama 1975, § 13-1-46. As stated by our now Presiding Judge Harris in McKinney v. State, 50 Ala.App. 271, 278 So.2d 719, 722 (1973), cert. denied, 291 Ala. 789, 278 So.2d 724, cert. denied, 414 U.S. 1027, 94 S.Ct. 456, 38 L.Ed.2d 320 (1973):
“The constituent elements of the statute in the instant case are: (1) assault upon a police officer, (2) who was engaged in the active discharge of his lawful duties, and, (3) with a deadly instrument. To read into this statute the additional elements of scienter, murderous intent, and the use of the instrumentality in such a manner as to reflect an evil intent, is unwarranted. This statute falls in the class of malum prohibitum and not malum in se. It was enacted to protect a class of citizens engaged in ferreting out crime and in the enforcement of the criminal laws of the State and thereby for the ultimate protection of society.”
Appellant also says that the State “failed to show that Hoyt Bassell was a law enforcement officer.” If we understand this contention, the answer is:
“It is the statutory duty of the sheriff and his deputies, among other things, ‘to ferret out crime.’ Section 5, Title 54, Code; Jones v. Buckelew, 247 Ala. 475(6), 25 So.2d 23.” Roberts v. State, 258 Ala. 534, 540, 63 So.2d 584 (1953).
After the jury that tried the case had been selected and had been sworn and while counsel for the State was “stating his case” to the jury, he purportedly read to the jury the indictment in this case, but in doing so it appears that he read the indictment, a similar indictment, against Tim Easter-wood. The mistake was promptly noted. The mistake and the correction thereof are shown by the following portion of the transcript:
*1122 “I will read for you the charge that he has been indicted for, so you can understand what the case is about.
WHEREAS, MITCH GAVIN READ THE INDICTMENT TO THE JURY.
Mitch Gavin read the Indictment against Tim Easterwood to the jury.
“I made a reference to Tim Easterwood in the indictment, and really, he would be the witness we anticipate, for the defense. But, he has nothing whatsoever to do with the case of Robert Goodwin. The fact that I read his name has nothing to do with it, one way or the other.
“The evidence, as we anticipate it to come to you will be, that back on August 28, 1979; there were four people in a cell upstairs in jail. Robert Goodwin, this defendant over here, Anthony Gray, Robert Farrell, and Tim Easterwood.
“On that day we will show, there was a disturbance in the jail.... ”
After counsel for the State then proceeded with his statement at about the length of half a transcript page, the following is then shown by the transcript:
“THE COURT: Excuse me, let me see the Indictment you just read to the jury.
.“LEE SIMS [Defendant’s counsel]: Here’s the Indictment he just read, here is the correct Indictment.
“MITCH GAVIN: Judge, I made reference to Tim Easterwood, which was the wrong Indictment. I instructed the jury that was to be disregarded.
“LEE SIMS: I didn’t know he could instruct the jury what to regard and disregard, Your Honor. We move for a mistrial. This is another case, has nothing to do with this case. And the D. A. has instructed the jury, and we move for a mistrial.
“THE COURT: —Motion for mistrial is denied. Did you read the right Indictment?
“MITCH GAVIN: I read the same charge, but I will be glad to read exactly what—
“THE COURT: You members of the jury, by mistake by the inadvertence, the wrong Indictment was read to you. That was an Indictment involving a charge against another defendant. And of course, that’s not the Indictment in this case. This Indictment is against Robert H. Goodwin, so read the proper Indictment.”
The proper indictment was then read. Appellant says that the court erred “in not granting a mistrial when the Assistant District Attorney read the indictment against Tim Easterwood instead of Robert Goodwin.” He further says that “This was an attempt by the District Attorney to impeach the testimony of Tim Easterwood by showing that he was indicted in a similar case.” If we thought it was, we would be more inclined than we are to believe that the court should have then granted defendant’s motion for a mistrial. It is true that Tim Easterwood testified on behalf of defendant, and the possibility of some injury to defendant resulting from the reading of the indictment against Easterwood is not to be ignored, but the ruling of the court is to be considered as of the time the ruling was made. It is to be noted that at that time, something was said about Tim Easterwood as a witness, but the motion for a mistrial was not predicated upon any ground to the effect that the testimony of Tim Easter-wood as a witness for defendant would be impaired by information received by the jury in the manner stated that Tim Easter-wood had been indicted. We do not know what was in the mind of defendant’s counsel at the time, but it would seem that if he then had it in his mind that the reading of the indictment against Tim Easterwood would have impaired the usefulness of Easterwood as a witness for defendant, counsel would have brought this to the attention of the trial court at the time. There was error on the part of counsel for the State, but there was no error on the part of the court in overruling defendant’s motion for a mistrial. It was made clear to the jury that an inadvertent mistake had been made by counsel for the State and that the information obtained thereby should be disregarded. We find neither error on the part of the court nor substantial injury to defendant.
*1123 While Mr. Bassell was testifying on direct examination, the following occurred:
“Q. Having observed many, many times persons in an intoxicated condition over the past four years as Chief Deputy for Tallapoosa County, in your judgment, do you feel these four people were intoxicated?
“LEE SIMS — And we object—
“THE COURT: Sustained.
“LEE SIMS — And we move to exclude that.
“THE COURT — It’s excluded. Just tell us what they were doing.
“A. Hollering and screaming, they had torn televisions and radios up. They had thrown mattresses, books and everything in the floor. They had totally destroyed the cell. They were glassy eyed.
“THE COURT — Was their speech coherent?
“A. Just hollering and screaming. In my opinion—
“LEE SIMS — I object to his opinion.
“A. —They was in a wild stage of drunkenness.
“LEE SIMS — We move to exclude that. Move for a mistrial.
“THE COURT — Motion denied.”
Appellant says:
“The Court erred in not excluding the witness Bassell’s remarks or opinion as to whether or not the defendant was intoxicated.”
The reference is expressly made to the portion of the transcript quoted above. It is to be noted therefrom that two motions were made in rapid succession, one a motion to exclude and the other a motion for a mistrial. At the present time there is no contention that the court should have granted a mistrial. Neither the witness nor counsel for defendant gave the court an adequate opportunity to make rulings as it should. The matter at the time was in the nature of a verbal melee, which on the whole indicates, as appellant now urges, that at the first part of the matter quoted the court was inclined to sustain objection to the testimony of the witness to his opinion and to exclude any such testimony. We cannot go beyond the record and state with reasonable certainty that the court overruled the motion by defendant’s counsel to exclude the testimony of the witness that “they was in a wild state of drunkenness.” As to the matter now under consideration, we are unable to find that the trial court committed error prejudicial to defendant.
We now quote another insistence on a reversal as found in appellant’s brief:
“The Court erred in ordering the defense not to argue about a night stick to the jury that had been marked as an exhibit and offered in evidence but not allowed in evidence by the Court. The following occurred in the courtroom:
“MR. SIMS: Judge, we are going to object to them taking that (night stick) out of here, it has been marked, it is an exhibit.
“MR. GAVIN: It’s not in evidence.
“MR. SIMS: It don’t make no difference. It’s been marked as an exhibit.
“THE COURT: Give it to me.
“MR. SIMS: We ask that it be placed here.
“THE COURT: It has not been admitted into evidence, therefore, it should not be exhibited to the jury. And, I’ll keep it here as part of the record.
“MR. SIMS: Judge, call the Court's attention to the case Judge - had that went up, where the shirt was marked as evidence, identified, and Judge _would not let him argue to the jury, and the case was reversed. Once an exhibit is labeled and marked, it’s part of the case that can be argued.
“THE COURT: Well, it’s not admitted into evidence, and you can’t argue things that are not in evidence.
“MR. SIMS: That’s not what the Supreme Court said Judge.
“THE COURT: Well, either you’re wrong or the Supreme Court is wrong, I’ll go up on that question. Go ahead.”
Appellant then cites Hope v. State, Ala.Cr. App., 378 So.2d 745 (1979), cert. denied, 378 So.2d 747, as the case to which he made reference on the trial. It does not support *1124 appellant’s contention, for there the particular exhibit, a bloody shirt, had been exhibited to the jury and had been marked as an exhibit at the instance of the prosecution. The transcript in the instant case does not affirmatively show that the “night stick” used by one of the officers in attempting to suppress the disturbance was ever displayed to the jury or marked for identification as an exhibit, but it is reasonably clear it was not done so by the State. Furthermore, there is nothing in the record to indicate that it had been utilized by the State in any way to advance or promote its case, as was done in Hope v. State, to which the State had obtained a benefit to the same extent as if the exhibit had been introduced and received in evidence. In Kabase v. State, 31 Ala.App. 77, 12 So.2d 758 (1943), expressly followed by Judge Tyson in the Hope case, the State had brought forward and exhibited to the jury the particular item of evidence involved (a pair of shoes) and had been allowed to remove them thereafter from the courtroom and thereby deprive defendant’s counsel of the right to exhibit them to the jury in the course of his argument. The wise principle set forth in Hope and Kabase is to prevent a party who has demonstrably used an exhibit in his support from forestalling a corresponding use thereof by his adversary; this he could well do if the adversary were not allowed to use it unless it had been formally introduced and received in evidence in the more conventional way.
We have discussed all but one of the issues raised by appellant and have concluded that none of those discussed justifies a determination that reversible error has been committed. We now address the only other issue raised by appellant.
The jury that tried this case was selected by process of striking from the list of jurors that on the same day had composed the list of jurors from which a jury had been selected by the same process in the same case against this defendant-appellant. After the first jury had been selected and before it had been sworn, the court declared a mistrial on motion of defendant. Defendant’s counsel objected to the use of the same list of jurors for the selection of another jury for the trial. In arguing in support of this objection, defendant’s counsel moved for a continuance, and the court denied the motion.
It appears that there is now presented the infrequent, if not unique, question whether a party may be required, against his objection, to select a jury from exactly the same list of jurors from which a jury had just been selected to try the same case. It is to be noted that it could hardly conceivably happen after a long time between the two selective proceedings. Although we are of the view that there would hardly ever be circumstances that would justify more than one definite answer to the question presented, we narrate some of the details of what occurred as to the selection of the jury that tried the case, and as to the background thereof, as are disclosed by the transcript.
The transcript does not show any of the proceedings relative to the selection of the first jury, but commences with the statement that “This case came on to be tried before a struck jury of twelve, on the 21st day of May, 1980 .... ” At an in camera hearing, counsel for defendant moved for a mistrial and made it known to the court that Mr. Wayne Chase the chief investigator for the office of the district attorney had “struck the jury for the State of Alabama,” that Mr. Chase was not licensed to practice law and that the jury was “not qualified as to Mr. Chase.” The transcript then continues:
“THE COURT: Well, you want to go out and qualify them?
“LEE SIMS: It’s too late, the jury is struck.
“THE COURT: We will see, if any of them are disqualified on account of that, we will declare a mistrial, and start all over again.
“LEE SIMS — Well, I made a motion and I would like the Court to rule on it.
“THE COURT — Let’s let the record further show, that the jury was struck during recess, and practically all of the jur *1125 ors were outside of the jury room. Also, the jurors have not been notified as of this time as to who have been struck, and who have not been struck. They do not know who is going to be on this jury, and I will go out and qualify the jury further on Wayne Chase. In the event any juror who has been selected to serve on this jury, is, for some reason or another disqualified, because of their connection or relationship with Wayne Chase, then we will take whatever steps are necessary to protect the rights of the defendant. Therefore, your motion is partially granted and partially overruled.
“WHEREAS, THE DEFENDANT AND HIS COUNSEL AND THE JUDGE RETURNED TO THE COURTROOM. THE FOLLOWING OCCURRED:
“THE COURT — Just got one or two more questions. Any of you related by blood or marriage to Wayne Chase, who is the Chief Investigator for the District Attorney’s Office? Any of you related by blood or marriage to Wayne Chase? Let the record reflect no one answered. De-, fense have any further questions?
“LEE SIMS — Any of you know Wayne Chase?
“SEVERAL JURORS SAID THEY KNEW HIM IN THAT HE WAS ONCE PRINCIPAL AND FOOTBALL COACH AT DADEVILLE HIGH SCHOOL AND AT TALLAPOOSA ACADEMY.' BOTH SCHOOLS LOCATED IN DADEVILLE ALABAMA.
“THE COURT — The fact that you people knew him in that he either taught you in school, was your football coach or taught your children, would that in any way bias or prejudice you in this case?
“ALL ANSWERED NO.
“THE COURT — Could you render a true, fair, and impartial verdict based solely on the evidence, in spite of the fact that you all know Mr. Chase so well?
“ALL ANSWERED NO.[1]
“LEE SIMS — Judge, I would like to make another motion in Chambers.
“MOTION HELD IN THE JUDGE’S CHAMBERS, OUT OF THE PRESENCE AND HEARING OF THE JURY. DEFENDANT PRESENT WITH HIS COUNSEL.
“LEE SIMS — Judge, let the record reflect that number 22 has been selected to serve on this jury, and number 12, who will also serve. Number 22, David Col-lum stated that he (Wayne Chase) was his football coach and his high school principal. He had a great deal of respect for him, and is a friend of his. Gary Willis stated that Wayne Chase was his high school principal, and he had a great deal of respect for him and was a friend of his. While both of these jurors said that would not prejudice their verdict, these jurors would not be sitting on this case, had the Court qualified the jury as to Wayne Chase, before the jury was struck. Therefore, we move for a mistrial. We would feel that it would be error to put us to trial without those questions having been asked, and us not having the opportunity to do anything about it.
“THE COURT — I grant your motion for a mistrial, and we will restrike the jury. Now, if you have an objection to that, get that in the record.
“LEE SIMS — We object, let the record show, we have just struck a jury for the trial of Robert Goodwin, through no fault of the defendant, the Assistant District Attorney Mitch Gavin left the State Investigator at the table to strike the jury. Now the Court has instructed the defense, that he must go out there right now, without any time lapse, without anything, and strike another jury in the case of the State of Alabama versus Robert Goodwin. We object to that because the State now knows every one of our strikes.
“THE COURT — And you know every one of theirs.
“LEE SIMS — And we feel it is unjust and unfair, to put the defendant to trial, after the State knows everyone of our strikes with this jury that is currently *1126 sitting here. Therefore, we move this case to be continued until the next time.
“THE COURT — Can’t have your cake and eat it too, motion is denied.
“LEE SIMS — We reserve an exception to the Court’s ruling.
“WHEREAS, EVERYONE RETURNED TO THE COURTROOM:
“THE COURT — Ladies and Gentlemen, I am going to ask you these qualifying questions again.”
Thereupon, the court asked the group of jurors about a transcript page of questions, to which no counsel for either party added any questions. The transcript is not clear as to where one of the members of the group was at the time the questions were asked by the court, but it appears therefrom that no point was insisted upon at the time, and no point is now made, as to that detail, as shown by the following portion of the transcript:
“THE COURT — All right, defense has no questions, strike the jury.
“LEE SIMS — We move for a mistrial because Mrs. Inez Farrow is not here, who is one of the jurors, she was not qualified as to this, and we move for a mistrial.
“THE COURT — Go down and get Mrs. Farrow.
“LEE SIMS — We withdraw our motion.
“THE COURT — Tell the Sheriff’s wife to stay down there. The jury has qualified, State has the first strike.”
According to the transcript and the apparent views of counsel for both parties, the jury that tried the case was then selected as provided by Code of Alabama 1975, § 12-16-100, which states in pertinent part:
“... [T]he court shall require two lists of all the regular jurors empanelled for the week who are competent to try the defendant to be made, and the district attorney shall be required first to strike from the list the name of one juror, and the defendant shall strike two, and they shall continue to strike all names alternately until only 12 jurors remain on the list and these 12 jurors thus selected shall be the jury charged with the trial of the case.”
No authority cited by either party furnishes an answer to the question now before us.
Code of Alabama 1975, § 12-16-100, is a replica of Code of 1940, T. 30, § 60, which repeats Code 1923, § 8641, which is in the language of the pertinent part of Section 32 of Acts 1919, No. 715, p. 1039. Except as modified in a few statutes applicable only to some counties in Alabama as to the size of the panel from which the jury is selected or as to the number of strikes afforded each party, there has been no change anywhere in Alabama in the statutory process since its enactment in 1919. A vital feature of the procedure provided by this statute, as well as by Code § 12-16-140 in civil cases, is that the striking be done “alternately by the parties.” By adherence to that method, neither party needs to reveal to the other the identity of any prospective juror that he is expected or plans to strike until he actually strikes the juror. The right not to be required to reveal it beforehand is inherent in the alternate striking feature of the statute. The value of the right is obvious; a denial of the fight, even as to the nondisclosure of the identity of a single juror to be struck could result in the selection of a different jury from the jury that would otherwise be selected and a different verdict from the verdict that would otherwise be returned.
Although the problem presented here is not fraught with the complexities of those found in Murray v. State, 210 Ala. 603, 98 So. 871 (1924), we find support therein for the position to which, even without it, we are inclined. Murray was a capital case, and in accordance with the law, including Act 715, General Acts 1919, p. 1039, a jury was selected by the process of striking until twelve were left, who were then “duly em-panelled and sworn as jurors to try” the case. There had been some mistakes in composing the persons or list of persons from whom the jury was to have been selected. One of the jurors left on the jury selected had been held disqualified by the court because he stated on his voir dire examination that he was not in favor of *1127 capital punishment. The other eleven were those held qualified and competent by the court. On motion of the State, the court ordered that the jury selected be discharged as the jury to try the case, that a new list of jurors be prepared from the then available jurors, including those who had been selected and those who had been struck, and that the parties strike from such list. To this the defendant objected and persisted in his objections. The court overruled his objections, and a new jury was selected as ordered by the court, which consisted of some, but not all of the jurors that had been previously selected for the case. The jury found defendant guilty of murder in the second degree and fixed his punishment at 25 years in the penitentiary. The court held that two errors were committed by the court, one in discharging the first jury that had been selected and the other in overruling defendant’s objection “to selecting another jury” from the panel then consisting largely of jurors that were on the list from which the first jury was selected. In the language of Justice Miller at 210 Ala. 606, 98 So. 871, the court said:
“The Court erred when it sustained the motion of the state to discharge this jury over objection and without consent of the defendant. The motion came too late. Authorities, supra. These persons thus selected became the jury from this venire for the trial of the defendant. After they were thus selected, impaneled, and sworn, the other persons on the special venire were automatically discharged as special jurors in this case, and the other persons on the regular venire were automatically relieved of jury duty in this case. Their duties in this case had ended. For other obvious reasons they should not be placed on the state and defendant again to select the jury. Each had shown their choice of the men on the list to each other for the trial of the defendant. Section 32, Act 1919, Gen.Acts 1919, p. 1040, and authorities supra.
“The court, after granting the motion of the solicitor to vacate, set aside, and discharge this jury, should have either continued the case or set another day of the term of court for the trial of the defendant, and ordered another and different venire facias for his trial, in accordance with the statute. The objections of the defendant to selecting another jury from this same venire facias should have been sustained by the court. This was reversible error. Section 32 of the Act in Gen. Acts 1919, p. 1040, and authorities supra.
Murray v. State, supra, was distinguished in Alabama Great Southern R. Co. v. Bolton, 242 Ala. 562, 565, 7 So.2d 296 (1942) as follows:
“So far as the bill of exceptions shows, the only effect the ruling of the court had in respect to requiring the parties to res-trike the jury was to substitute J. Tullie Jones drawn and subsequently summoned for the person who was not drawn but to whom the deputy delivered the first summons issued to said J. Tullie Jones. The jury as selected was from the regular panel drawn, summoned and qualified to serve for the week. The ruling in the case of Murray v. State, 210 Ala. 603, 98 So. 871, was in respect to a special venire for the case and that authority is not in point.”
Although Murray v. State was not in point in Alabama Great Southern R. Co. v. Bolton, we are convinced that it is in point in this case and that the trial court was in error in requiring the defendant to proceed to select a jury from the panel from which the previous jury had been selected. We do not say that there could never be an occasion in which an objecting party should be required to strike twice from the same panel in the same case, but we are convinced that at least generally he should not be required to do so and that there is nothing in the case before us to constitute a valid exception to that general rule. As to this, we see little, if any, discretion vested in the trial court, such as its discretion in the matter of granting a continuance. There is more involved here than whether a motion to continue should have been granted. It is apparent, if not conclusive, that, without the panel from which the jury was selected for the trial of the case, a jury would not *1128 have been available for that purpose and for that reason the trial would necessarily have been postponed.
For the error stated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.

. There is no contention that “no” correctly and fully reflects the answers of the jurors.