A jury found this appellant guilty of rape in the first degree as charged in an indictment, substantially in the language of Alabama Criminal Code § 13A-6-61, that he "a male, did engage in sexual intercourse with [the name of the alleged victim], a female, by forcible compulsion." The indictment was returned on May 27, 1980. On that date the Grand Jury returned two other indictments against the same defendant, one for burglary in the first degree and the other for burglary in the third degree. The three indictments were based upon what, according to the testimony of the alleged victim, occurred at her home in Demopolis on the night of *Page 968 
March 16, 1980. The defendant was not arrested until February 17, 1982, in Detroit, Michigan, from which city he was extradited to Alabama and in due course was arraigned on April 30, 1982, accompanied by his counsel, who, by reason of defendant's indigency was appointed by the trial court and who continues to represent him on this appeal and has filed a brief in his behalf.
According to the undisputed evidence, the only eyewitnesses to the alleged rape were the victim and the alleged rapist. The only eyewitnesses who testified as to the actual facts of the alleged rape was the alleged victim.
According to the testimony of the alleged victim, a married person living with her husband at an apartment in Demopolis whose husband was away from home at work on the night of March 16, 1980, the defendant gained entrance to her apartment and had sexual intercourse with her by forcible compulsion. We see no need to restate the details of her testimony. We believe that a summary of her testimony as found in appellant's brief suffices, which we now quote except for the name of the victim-witness as follows:
 "While taking a shower at about 9:00 P.M. on March 16, 1980, [the victim] testified that she saw a black man standing in the living room of her home (R. 63-64), the black man was later identified as the defendant, Charles Edward Poole (R. 75). [The witness] further testified that the appellant, Charles Edward Poole, approached her with a knife in his hand and motioned for her not to scream (R. 64). She testified that Poole made an unsuccessful attempt to have sexual intercourse with her while she was in the bathroom, but he was too short (R. 65). That she was made to have sexual intercourse with the appellant in the bedroom later (R. 67-68)."
We continue to quote as sufficient a summary of the testimony pertaining to the question of defendant's guilt from the "STATEMENT OF THE FACTS" of appellant's brief summarizing the testimony of the other witnesses called by the State:
 "Fulton Prevost, after having testified to his training in the area of fingerprint identification, Prevost stated that the latent fingerprint lifted from the scene was that of the defendant, Charles Edward Poole (R. 113-114).
 "Officer Marty Hoven, York Police Department, was one of the first officers to arrive on the scene. He was employed with the Demopolis Police Department on March 16, 1980. (R. 115). Hoven testified that he spoke to [the alleged victim] (R. 116) and dusted for fingerprints (R. 118). He was unable to raise a useable print from a knife found in the cushions of the sofa (R. 119). Several State exhibits were introduced on the testimony of Hoven depicting the scene, over the objection of the defense (R. 121, 122, 123, 124).
 "Dr. Reese Holifield, a medical doctor, (R. 180) testified that his examination showed that [the alleged victim] had engaged in a recent sexual act."
 I.
The caption of the first issue presented by appellant is thus stated in appellant's brief:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING THE DEFENSE'S COUNSEL MOTION FOR A CONTINUANCE FOR THE STATE PRODUCTION OF TESTS RESULTS CONDUCTED UNDER THE COURT'S ORDER [sic]."
When the instant case was called for trial on September 13, 1982, the trial court let it be known that defendant had filed a "Motion for Continuance" and said: "We're going to take some testimony at this time on the motion for continuance. You filed the motion, Mr. Langster [attorney for defendant]," to which Mr. Langster replied:
"Yes, sir; that's right.
 "Your Honor, on June 16, Mr. Watkins [District Attorney] submitted a motion to order an examination of the suspect: head hair samples, pubic hair samples, *Page 969 
saliva samples. This motion was heard by the Court on July 7th, at which time the Court ordered the examination as requested with the exception of a blood test. Also the Court ordered that the results of the test and the samples be made available to the defense for examination by an expert or analysis by an expert.
 "We have talked to the prosecutor on several different occasions after this particular motion was filed and after the order was made, and we have not gotten the results of the test nor have we gotten any samples of the suspect that were found at the scene. It's our position that if these samples were made available to us, it would be favorable toward the defendant and that these particular samples and the test results are material to the preparation of the defense case. We ask that that case be continued until such time as these particular results are made available to us or the samples are made available to us.
 "MR. WATKINS: Your Honor, we go back, the State asked Mr. Langster's position [permission?] as attorney for the defendant to be allowed to take these particular bits of evidence, including hair samples, saliva tests, and a blood sample. Mr. Langster refused. I filed a motion but was afraid that maybe taking blood against the refusal of the defense would probably be impermissible invasion. Therefore, when the saliva test was taken it was submitted to the lab along with the hair — I wrote Mr. Langster and talked with him by phone about the test, and I stated to him that the saliva was not taken properly and had dried out but that the lab informed me it would not have been any good without the blood because they must have a blood type for the saliva test to be effective.
 "The hair samples were inconclusive but were made available to him to show they were Negroid type hair. And that's all they could say. Mr. Langster by phone, I believe he will agree, told me he wanted the tests done. I said, `You make him available; we'll do the tests.' To this day, the first time I've heard any more from him was today when we are ready for trial. We had time, when I talked to him, to have had these tests done had he wanted to do them. The State was willing to do them, but he's the one who refused to do them and not the State.
 "Everything is available to him, which would be nothing more than the hair, to show it was Negroid hair and that it was compatible with Negroid hair."
The colloquy continued, as shown by three or four pages of the transcript which add little to the positions of the respective parties through their attorneys that is already shown by the quoted material, which for the sake of desirable brevity we omit and now proceed with the remainder of the colloquy as follows:
 "THE COURT: I see no motion that you filed to examine the State's evidence.
 "MR. LANGSTER: We filed a motion at the bench at the time this motion was argued. After the Court had made a decision to grant Mr. Watkins' motion, we filed a motion at the bench at that time that we be permitted to examine the samples they got from the scene and also be permitted to analyze the reports. I think the record at least would reflect the fact that we did make that motion and that it was granted by the Court.
 "All we are saying is that at least we are entitled to a continuance under the Court's order.
 "MR. WATKINS: Judge, I can't see why there should be a continuance when I made him the offer — which he agrees — that if he wanted to have his man examined, we would furnish the facilities and that we would have that report available. He refused to do it and has always refused to do it.
 "THE COURT: Based on what's been presented to me, I'm going to deny a motion for a continuance. This case will proceed to trial.
 "MR. LANGSTER: We object to that particular ruling, and we take exception for the record. *Page 970 
"THE COURT: All right. That's on the record."
It appears that the colloquy was not in the presence of the prospective jurors, but that promptly thereafter in the presence of prospective jurors, the following occurred:
 "THE COURT: Ladies and gentlemen, I welcome you to this term of Court. We will be trying criminal cases and have a good many cases on the docket this week. The first case we are going to try is the State of Alabama v. Charles Edward Poole.
"(A jury was duly empanelled and sworn.)"
Notwithstanding the undesirable vagueness as to the positions of the attorneys for the respective parties as reflected by what they said in the colloquy among them and the trial court, we are convinced that the ruling of the trial court denying defendant's motion for a continuance was well within the sound discretion vested in the trial court as to motions for a continuance, that there was no abuse of such discretion and that there was no error prejudicial to defendant resulting from the court's denial of his motion for a continuance.
 II.
Appellant captions the second issue presented by him as follows:
 "THE TRIAL COURT ERRED TO REVERSAL WHEN AN INDICTMENT CHARGING DEFENDANT WITH BURGLARY, IN AN UNRELATED CASE, IN THE PRESENCE AND HEARING OF THE JURY, WITHOUT SPECIFIC INSTRUCTIONS FORM THE COURT THAT THE IMPROPER READING BE DISREGARDED BY THE JURY [sic]."
Although the court reporter's transcript does not include that part of the proceeding during which the trial court usually, as we assume it did in the instant case, makes known to the panel of jurors from which the jury to try the case is selected or that part of the trial court's statement or statements to be selected jury immediately prior to their taking an oath to render a true verdict according to the evidence in the particular case, it seems that there is agreement between the parties that the trial judge in open court read to the jurors that tried the case a part at least of one of the two indictments against defendant for burglary. After the jury was sworn and after the attorneys for the respective parties had completed their opening statements to the jury, defendant's counsel made known to the trial court that he desired to make a motion out of the presence of the jury. The jury was then retired to the jury room and the following occurred:
 "MR. LANGSTER: We are moving that there be a mistrial declared because the Court, in reading the indictment, read an indictment charging the defendant with burglary. The defendant is not on trial here for burglary. The jury was present at the time the indictment was read charging the defendant with burglary, and due to the prejudicial nature of reading this particular indictment, we're asking for a mistrial.
 "MR. WATKINS: I think the record reflects that what the Court said. I don't think he completed reading it, but I don't believe it would have prejudiced the jury. I don't think they know what it meant one way or the other, but I guess you might ask them if it would.
 "THE COURT: Well, I did start to read the wrong indictment. There's been several indictments returned in this case, but that was before we empanelled the jury.
"MR. WATKINS: They were in the box.
 "THE COURT: That's right; they were in the box. I'm going to deny your motion. When I get the jury back in here, I'll ask them the question if they feel it prejudiced them in any way. But I fail to see how it would have any effect one way or the other on the trial of this case, especially since the same party was involved.
 "MR. WATKINS: Right, Judge, and since they have never had this put before them that this was another charge. You *Page 971 
started reading something and said, `No; I'm reading the wrong thing.' I don't think it would have any effect.
 "THE COURT: I'm going to deny that motion for a mistrial. Bring the jury back in.
"(In open Court; jury present.)
"THE COURT: Call your first witness.
 "MR. WATKINS: We call [the alleged victim named in the indictment]."
We find nothing further in the transcript with reference to the incident now under consideration. It is to be noticed that in the caption of this particular issue in defendant's brief, defendant refers to the other indictment as an indictment "in an unrelated case" and that the trial judge said at one point, "There's been several indictments returned in this case. . . ." Whether more than three indictments had been returned against this defendant by the Marengo County Grand Jury, we do not know, but we believe we are justified in concluding that the other indictment from which the court read to the jury was not in an "unrelated case" but, on the other hand, was for an alleged burglary committed at the victim's home a few minutes before the encounter between her and the intruder. It appears that the occurrence as above stated was "without specific instructions from the court that the improper reading be disregarded by the jury," as now asserted by appellant, and we are at a loss to understand with reasonable certainty why some cautionary instructions on the subject were not given, unless perhaps the trial court thought it better not to call the attention of the jury to a matter as to which it would not give consideration and which, without further mention, would have had no influence upon the jury.
Inasmuch as Goodwin v. State, Ala.Cr.App., 395 So.2d 1119
(1981) is the only authority cited in appellant's brief in support of the issue now under consideration, we refer to that case, wherein the district attorney had inadvertently read a separate indictment against another defendant for the same crime charged in the indictment against Goodwin. The conclusion of the opinion in Goodwin on the particular point at 395 So.2d 1122 is as follows:
 "There was error on the part of counsel for the State, but there was no error on the part of the Court in overruling defendant's motion for a mistrial. It was made clear to the jury that an inadvertent mistake had been made by counsel for the State and that the information obtained thereby should be disregarded. We find neither error on the part of the Court nor substantial injury to defendant."
What was held in Goodwin, supra, does not afford a solution to the particular problem now under consideration. Although the absence of instructions by the court in the instant case to disregard what was read from the other indictment precludes any use of one of the reasons why the court in Goodwin, supra, held that the court was not in error in overruling defendant's motion for a mistrial, we can consistently therewith hold, as we now do, that the trial court was not in error in overruling defendant's motion for a mistrial.
 III.
We now quote the caption and the argument of appellant in its entirety as to the third issue presented in his brief:
 "THE DELIBERATE EXCLUSION OF ALL PERSONS OF AFRICAN-AMERICAN ANCESTRY FROM SERVICE ON THE PETIT JURY WAS A DENIAL OF THE APPELLANT'S RIGHT OF A TRIAL BY AN IMPARTIAL JURY.
 "The Sixth Amendment to the United States guarantee the accused of a fair and impartial trial, a selection of a jury by the State of Alabama on the basis of race is prohibited by the U.S. Constitution."
By the transcript of the proceedings it is made clear, largely by assertions by counsel for defendant, that all of the jury that tried defendant are white, the victim is white, and the defendant is black. We find nothing in appellant's brief or any transcript of the proceedings that supports appellant's contention that defendant was deprived *Page 972 
of his Sixth Amendment right to "an impartial jury of the State and district wherein the crime" was committed.
 IV.
Before the sentence hearing, defendant was given due notice that the State would proceed against him under the Habitual Felony Offenders Act, and at the hearing proof was made that he had been previously convicted of three felonies in Michigan. Alabama Criminal Code, § 13A-5-9 (c)(3), provides:
 "In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
". . .
 "On conviction of a Class A felony, he must be punished by imprisonment for life without parole."
The trial court sentenced defendant in the instant case to imprisonment for life without parole.
Appellant takes the position, one substantially the same as the one taken by him at the sentence hearing, that the three convictions in Michigan are not within the category of felonies as comprehended by the Alabama Habitual Felony Offenders Act. One of said convictions was for carrying a concealed weapon, a pistol, on or about his person, in violation of Michigan Penal Code § 750.227, which provides, according to the exhibits introduced in evidence on the sentence hearing in the instant case, that a person violating said statute "shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by a fine of not more than $2,500.00." According to Alabama Rules of Criminal Procedure, Rule 6 (b)(3)(iv):
 "Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607 § 130 (4), Acts of Alabama 1977, p. 812 (§ 13A-1-2 (4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980."
Alabama Criminal Code § 13A-11-73 provides: "No person shall carry a pistol in any vehicle or concealed on or about his person, except on his own land, in his own abode or place of business, without a license therefor as hereinafter provided." Section 13A-11-84 (a) provides:
 "Every violation of subsection (a) of section 13A-11-72 or of sections 13A-11-81 or 13A-11-82 shall be punishable by imprisonment for not more than five years. Every violation of subsection (b) of section 13A-11-72 or of sections 13A-11-73, 13A-11-74 and 13A-11-77 through 13A-11-80 shall be punishable by imprisonment for any term less than one year or by a fine of not more than $500.00, or both. . . ."
[emphasis supplied].
The quoted provisions of the present Alabama Criminal Code were the statutory law of Alabama for many years before appellant's convictions in Michigan. We agree with appellant's contention that if the conduct of unlawfully carrying a concealed weapon, a pistol, on or about the person of the defendant had taken place in Alabama, it would not have constituted a felony.
Each of the two other convictions in Michigan was for an attempted "breaking and entering in violation of Michigan Penal Code § 750.110," which prescribes punishment for 10 years for breaking and entering some places and 15 years for breaking and entering other buildings or places. Michigan Penal Code § 750.92, captioned "Attempt to commit crime," provides:
 "2. If the offense so attempted to be committed is punishable by imprisonment in the state prison for life, or for five years or more, the person convicted of such attempt shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or in the county jail not more than 1 year."
At the sentence hearing, there was a lengthy colloquy among the trial court and the attorneys for the respective parties as *Page 973 
to the applicability vel non of the Alabama Habitual Felony Offenders Act to the convictions in Michigan, which was interspersed with proffered exhibits by the State as to the law of Michigan on the subject and objections thereto by defendant and which included an apparent agreement between the parties that the three convictions in Michigan were for crimes that constituted felonies in Michigan, but the parties continued to disagree as to whether the Alabama Habitual Felony Offenders Act was applicable to them. During the colloquy, the trial court said:
 "It's my understanding it doesn't make any difference whether it's a felony in the State of Alabama. If he's convicted of a crime that was a felony where he was convicted of that crime, then that would place him in the purview of habitual felony offender. The statute says: Whenever it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:
 "I think it makes no difference whether it was in Alabama or whether it was in some other jurisdiction. If he was convicted of a felony in another jurisdiction, then the sentence would be enhanced and subject to the habitual felony offender law."
It appears from the transcript of the proceeding that the sentence hearing commenced on November 3, 1982, and at the conclusion of the hearing thereon that day, the trial judge said:
 "If y'all will give me briefs on that before the 19th, I'll delay sentencing until that time."
On December 14, 1982, there was a resumption of the sentence hearing, at which it was indicated that the parties had submitted briefs. Just before the pronouncement of the sentence and just after the defendant had said, "No," to the question by the court as to whether he had anything to say before sentence was pronounced, the trial court said:
 "The State of Alabama filed notice of intention to treat you as an habitual offender. The State has introduced evidence showing that you were convicted in Michigan of attempted breaking and entering, that you were convicted of carrying a concealed weapon, and attempted breaking and entering. So, you have three prior felony convictions in the State of Michigan."
As indicated above, we agree with counsel for appellant that the conviction in Michigan for the offense of carrying a concealed weapon, a pistol, on defendant's person does not constitute a previous conviction for a felony pursuant to the Alabama Habitual Felony Offenders Act, and for this reason the sentence to life imprisonment without parole cannot stand. However, we are not now in full agreement with appellant's challenge of the other two Michigan convictions, each for an attempted breaking and entering, which convictions appear to have been for crimes committed before the effective date of the Alabama Criminal Code for attempts to commit crimes in Michigan that are essentially the same as either burglary in the first degree (Code of Alabama, 1940, Tit. 14, § 85) or burglary in the second degree (Tit. 14, § 86), each of which was a felony. Nevertheless, neither the transcript of the sentence hearing nor the briefs of parties on appeal enlightens us sufficiently as to whether the attempted breaking or entering was essentially the same as some crime in Alabama that would constitute a felony when committed in Alabama.
 V.
By the final issue presented by appellant, he challenges the "imposition of sentence of life imprisonment without parole under the circumstances of this case" as allegedly constituting "cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." A consideration of that particular issue at this time would call for a mere academic discussion by reason of what we have heretofore *Page 974 
said herein, and we think it appropriate to forego such a discussion.
We are of the opinion that the judgment of conviction should be affirmed but that the cause should be remanded with directions that the trial court, after notice to the parties, conduct again a sentence hearing and rule upon the question as to whether each of the previous convictions of this appellant in Michigan was for conduct that would have constituted a felony if such conduct had taken place in Alabama, as required by Rule 6, Rules of Criminal Procedure, that the parties be given an adequate opportunity to present any proper evidence and state their respective views on the point. The trial court shall thereupon vacate its previous sentence and resentence the defendant, this time to imprisonment that is not inconsistent with this opinion. A return to this order of remandment shall be made in due course with notice to the parties. Either party aggrieved thereby will have 28 days within which to file a brief in this Court, and the opposing party will have fifteen days thereafter within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
JUDGMENT OF CONVICTION AFFIRMED; REMANDED WITH DIRECTIONS AS TO SENTENCE.
All the Judges concur.